IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYAN CONKLING,

       Plaintiff,

v.                                       Case No. 1:14-cv-00234-WJ-KBM

TRI-STATE CAREFLIGHT, LLC and
BLAKE STAMPER, individually,

       Defendants.

## RESPONSE IN OPPOSITION TO MOTION TO
## ACCEPT LATE-FILED MOTION TO SUBSTITUTE PARTIES

After months of delay, broken promises, and missed Court deadlines, Plaintiff's counsel[1]

filed an untimely Motion for Substitution of Parties on June 10, 2016 [Doc. No. 67] ("Mot. for

Substitution"). Defendants noted in opposition to the motion that it was untimely and that the

Court had not authorized a motion to be filed late. Only then did Plaintiff's counsel belatedly file

the instant Motion to Accept Late-Filed Motion to Substitute Parties. Plaintiff's counsel

repeatedly blames Defendants for the lengthy delay, arguing that "had Defendants not opposed

Plaintiffs' [sic] request for substitution of parties when it was first requested, there would be no

issue." (Mot. at 4.). Until Mark Conkling was properly and formally appointed personal

representative of Plaintiff's estate, however, he could not properly be substituted as a party. Even

if Plaintiff's counsel had had the legal authority to file a motion for substitution before the

appointment of the personal representative of Bryan Conkling's estate, it would have been

---

[1] Ordinarily, the filings of an attorney are attributed to the attorney's client (e.g., "Plaintiff's motion," "Defendants' response.") In this case, however, the Plaintiff died in September 2015. Until a personal representative was formally appointed and substituted as a party, there was no longer a "plaintiff" in the case. The procedural activities are properly referred to as those of counsel.

inappropriate to substitute an individual as a plaintiff before the probate court ordered the appointment. Defendants did not delay anything; they merely insisted that Plaintiff's counsel comply with the law.

As for the instant motion, one tardy action promptly addressed might warrant excusal, but the long list of tardy actions in this case, most of which remain unexplained, does not constitute "excusable neglect." Instead, the instant motion is quite similar to motions that other federal district courts have denied. *See, e.g., Kasting v. American Family Mut. Ins. Co.*, 196 F.R.D. 595 (D. Kan. 2000) (denying motion for substitution of parties, noting, "Plaintiff is urging this Court to disregard its own established deadline, to accept an untimely motion, and to provide another extension to rectify the untimely motion"). The Court should deny the Motion to Accept Late-Filed Motion to Substitute Parties and dismiss the case entirely and with prejudice.

I.      **Background and Procedural History**

In January of 2014, Plaintiff Bryan Conkling filed this lawsuit, which Defendants removed to this Court, asserting a variety of claims against Tri-State CareFlight, LLC ("Tri-State"), Conkling's former employer, and Blake Stamper, the former owner of Tri-State. Bryan Conkling died on September 2, 2015. On September 30, 2015, Plaintiff's counsel filed a "Suggestion of Death Upon the Record and Unopposed Motion to Vacate Trial Setting and Pre-Trial Deadlines" [Doc. No. 62] ("Suggestion of Death"). The Suggestion of Death asserted that "[i]n accordance with Rule 25 of the Federal Rules of Civil Procedure, counsel for Plaintiff will file a Motion for Substitution of Parties or other appropriate pleadings within ninety days of the date of this notice." Ninety days from September 30, 2015 was December 29, 2015. On that date, Plaintiff's counsel did not file a motion for substitution of parties. Instead, he filed an Unopposed Motion to Extend Deadline for Substitution of Parties [Doc. No. 64]. In that motion, Plaintiff's counsel asserted that the "process" for having Mark Conkling appointed as personal

representative of Bryan Conkling's estate was delayed because of problems obtaining the death certificate. He asked the Court to "extend the deadline for substitution of parties to ten days after counsel has received an Order appointing Mark Conkling as the Personal Representative." This motion also stated that "[i]f further delay of the death certificate results in this deadline occurring more than sixty days from the date of entry of an Order extending this deadline, [Plaintiff's] Counsel proposes to submit a status report to the Court explaining the delay." The Court entered an order granting the requested extension and requiring Plaintiff's counsel to file a motion for substitution of parties within ten days of the order appointing Mark Conkling as personal representative and to file a status report "apprising the Court and all parties of the reason for the delay" if the motion was not filed within sixty days of the entry of the order. [Doc. No. 65.]

On February 29, 2016 – almost six months after Bryan Conkling's death – Plaintiff's counsel filed a status report. [Doc. No. 66.] In the status report, Plaintiff's counsel asserted that Mark Conkling "finally received a death certificate at the beginning of February." He also asserted that the "death certificate contained errors regarding Bryan Conkling's personal information." The death certificate was not attached to the status report, nor was there any explanation of what "errors" were on it or why they might have delayed the appointment of a personal representative of Bryan Conkling's estate. In any case, the February 29 status report also asserted that "[a] corrected death certificate was received very recently" and that Plaintiff's counsel was preparing to file the papers to have Mark Conkling appointed as the personal representative and that this lawsuit "should be ready to move forward within approximately 30-60 days." Instead of promptly filing a petition to begin the probate process that would appoint Mark Conkling as the personal representative, however, Plaintiff's counsel waited yet another month, until March 31, 2016, to file the petition. (*See* Ex. A to Defs.' Resp. in Opp. to Motion for Substitution of Parties.)

Thirty days from the date "Plaintiff's Status Report" was filed in this case was March 30, 2016; sixty days from the filing of the status report was April 29, 2016. Plaintiff's counsel did not file a motion for substitution of parties, or a status report, or anything else in March, April, or even May of 2016. Instead, after contacting defense counsel for the first time on June 8, 2016 to determine Defendants' position on the long-delayed motion, Plaintiff's counsel finally filed a Motion for Substitution of Parties on June 10, 2018. Mark Conkling, however, had been appointed personal representative of Bryan Conkling's estate on May 16, 2016, so that motion was untimely under Rule 25 and the Court's order. (*See generally* Defs.' Resp. in Opp. to Mot. for Substitution of Parties [Doc. No. 68].) The instant motion is meant to retroactively correct the untimely filing.

## II.   Asking Plaintiff's counsel to comply with the law is not "delay."

The first argument Plaintiff's counsel makes in an attempt to excuse the months of delay between Bryan Conkling's death in September of 2015 and the untimely filing of the Motion for Substitution of Parties on June 10, 2016 is to blame Defendants. (*See* Mot. at 2 ("Defendants seek to use the delay caused by their own request to tie the substitution of parties to the probate process"), 4 ("the Defendant's [*sic*] opposition to that substitution has already caused far more delay that [*sic*] counsel's inadvertent error in filing").) The law, however, not Defendants, "tie[s] the substitution of parties to the probate process." Rule 25 requires substitution of the "*proper party*," not any party. *See* Fed. R. Civ. P. 25(a)(1). Neither Mark Conkling nor Plaintiff's counsel argue that Mark Conkling, on his own and without having been appointed personal representative of Bryan Conkling's estate, had standing to pursue employment claims that belonged to Bryan Conkling. That would violate Rule 17 of the Federal Rules of Civil Procedure, which requires that an action must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a)(1).

Instead, Rule 17 of the Federal Rules of Civil Procedure and New Mexico law confer standing on "a *personal representative* of a decedent domiciled in New Mexico at the decedent's death" to "sue and be sued." NMSA (1978) § 45-3-703(E) (emphasis added); *see also* Fed. R. Civ. P. 17(b)(3). Attorneys cannot substitute random individuals as parties in ongoing lawsuits, and even close relatives like children or parents cannot be presumed to be the personal representatives of their relatives' estates in the absence of formal appointment in accordance with state law. *See, e.g., Porter v. Novartis Pharm. Corp.*, No. 06-03052, 2014 U.S. Dist. Lexis 100003 (N.D. Ill. July 23, 2014) (dismissing lawsuit with prejudice; plaintiff who was not executor of father's estate had no legal authority to pursue claims unless and until appointed by probate court in accordance with state law); *Chiapel v. Novartis Pharm. Corp.*, No. 06-1642, 2014 U.S. Dist. Lexis 147708 (E.D. Mo. Jan. 23, 2014) (dismissing claims because the substitute plaintiff was not the personal representative of the deceased plaintiff's estate and thus had no ''legal status'' or ''standing'' to continue the litigation under state law). Until the New Mexico court formally appointed him as personal representative of the estate, Mark Conkling had no legal authority to pursue the claims set forth in this lawsuit on behalf of his son or his son's estate. Requesting or even insisting that Plaintiff's counsel comply with the law is not "delay." Plaintiff's counsel cannot use his attempt to ignore or circumvent the probate process, or Defendants' refusal to acquiesce in that plan, to excuse the months of inaction and delay in this case.

### III.    Inadvertence and a busy schedule are not "excusable neglect" under Rule 6(b).

The second argument that the motion offers to support the request that the Court accept the late Motion for Substitution of Parties is to characterize the series of delays described above as "excusable neglect" warranting a post-hoc extension under Rule 6(b) of the Federal Rules of Civil Procedure. In particular, Plaintiff's counsel characterizes his failure to calendar the proper

deadline as "an inadvertent error," (Mot. at 4), and he cites a busy schedule in May 2016 – not, notably, at any other time during the multi-month saga from September of 2015 until June of 2016 – to explain that inadvertent error, (Mot. at 5). In any case, neither inadvertence nor a busy schedule qualifies as "excusable neglect" under Rule 6(b). *See, e.g.*, *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006) (''neglect due to a busy schedule is not excusable''); *Falls v. Novartis Pharm. Corp.*, No. 3:13cv270 (D. Conn. Aug. 1, 2014) ("attorney inadvertence on its own is not excusable neglect for an untimely motion for substitution") (citing cases); *United States v. Mitchell*, 464 F.3d 1149, 1150 (10th Cir. 2006) (a party's inadvertence, ignorance of the rules, or mistakes construing the rules ordinarily do not constitute excusable neglect). In *Pioneer Inv. Co., v. Brunswick Associates Ltd. Partnership.*, 507 U.S. 380, 395-97 (1993), the Supreme Court explained that although strict enforcement of time deadlines might penalize clients for their attorneys' neglect, that was irrelevant because clients ''must be held accountable for the acts and omissions of their chosen counsel." Plaintiff's counsel has not satisfied his burden of establishing "excusable neglect" under Rule 6(b), and so the original deadline of Rule 25 applies and the Court should not retroactively extend it.

**IV.    The failure to satisfy Rule 25 of the Federal Rules of Civil Procedure requires dismissal of the action; case law regarding dismissal as a "sanction" is irrelevant.**

Having failed to satisfy Rule 25 and the "excusable neglect" requirements of Rule 6(b), Plaintiff's counsel attempts to change the subject and legal standard. In particular, the motion argues that "dismissal of an action is an extreme sanction" and that the factors for dismissal *as a sanction* have not been satisfied. (Mot. at 6-7.) Defendants, however, are not arguing that the lawsuit should be dismissed as a sanction. The lawsuit should be dismissed because Rule 25 specifically requires dismissal if the deadline set forth in the rule is not met: "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the

decedent *must be dismissed*." Fed. R. Civ. P. 25(a)(1) (emphasis added). The case law regarding dismissal of a lawsuit as a discovery sanction or for other reasons is not applicable. Imposing the sanctions standards of cases like *Jones v. Thompson*, 996 F.2d 261 (10th Cir. 1993) (*see* Mot. at 7), which involved a dismissal for failing to comply with court orders (and had nothing to do with Rule 25), would impermissibly inject additional requirements into Rule 25, essentially rewriting and changing the rule. As cases like *Kasting v. American Family Mutual Insurance Company* make clear, a court may properly dismiss a lawsuit for failing to meet the substitution deadlines without engaging in a sanctions analysis. 196 F.R.D. 595 (D. Kan. 2000). That is the case here.

## Conclusion

The Motion for Substitution of Parties was untimely, and neither Plaintiff's counsel nor the Personal Representative of the original Plaintiff's estate satisfied the requirements of "excusable neglect" under Rule 6(b) of the Federal Rules of Civil Procedure. Accordingly, dismissal is required under Rule 25. The Court should deny the Motion to Accept Late-Filed Motion to Substitute Parties and dismiss the lawsuit in its entirety.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By_____
Charles J. Vigil
Jeffrey L. Lowry
P. O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
FAX:  (505) 768-7395
cvigil@rodey.com
jlowry@rodey.com
*Attorneys for Defendants*

- 7 -

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of July, 2016, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By _____
   Jeffrey L. Lowry