IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYAN CONKLING,

      Plaintiff,

      v.                            No. 14-cv-0234 WJ/KBM

TRI-STATE CAREFLIGHT, LLC and
BLAKE STAMPER

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO ACCEPT LATE-FILED MOTION TO**
**SUBSTITUTE PARTIES**
**and**
**GRANTING PLAINTIFF'S MOTION FOR SUBSTITUTION OF PARTIES**

THIS MATTER comes before the Court upon Plaintiff's Motion for Substitution of Parties, filed June 10, 2016 **(Doc. 67)** and Plaintiff's Motion to Accept Late-Filed Motion to Substitute Parties, filed July 8, 2016 **(Doc. 70)**.  Having reviewed the parties' briefs and applicable law, the Court finds that both of Plaintiff's motions have merit and shall be granted.

BACKGROUND

This is an employment discrimination case, filed in First Judicial District Court, County of Santa Fe, on January 13, 2014.  Defendants removed the case to federal court on March 10, 2014.  Bryan Conkling worked as a base manager for Tri-State Careflight ("Careflight"), an emergency medical services ("EMS") provider that provides aerial transport of critically ill and injured patients for health care facilities and EMS agencies. Mr. Conkling contends that Careflight and Dr. Stamper began to discriminate against him after he became ill in the summer of 2012 and had to take medical leave under the Family and Medical Leave Act of 1993

("FMLA").  He alleges that when he returned to work, he was not permitted to work in Santa Fe as he had done in the past, but was assigned to the Gallup base and was demoted.  He eventually was returned to a position as a co-manager at the Santa Fe base, but found that position intolerable.  Mr. Conkling also alleges retaliation because he engaged in protected labor organizing activity when he informed certain governmental regulatory agencies about safety violations and violations regarding transport, storage and use of controlled substances.  Mr. Conkling was terminated from his position, and he contends that his termination was based on discrimination on the basis of his serious health condition and in retaliation for his protected labor organizing activity and for reporting safety violations.

Bryan Conkling ("Bryan" hereinafter) died intestate on September 2, 2015, during the pendency of this case.   A Suggestion of Death was filed with this Court on September 30, 2015 (Doc. 62).  Plaintiff intended to substitute Mark Conkling ("Mark"), Bryan's father, as the plaintiff with the expectation that Mark would be appointed personal representative.   However, Plaintiff's counsel agreed to delay the substitution until Mark had been appointed personal representative.

On December 29, 2015, Plaintiff's counsel filed an unopposed motion to extend the deadline for substitution of parties, which the Court granted the following day, on December 30, 2015.  Doc. 65 ("Court's December 30th Order").  The Court also required that counsel for Plaintiff file a status report if the Motion to Substitute parties was not entered within sixty days, and also that the Motion to Substitute Parties should be filed within ten (10) days of the entry of an Order appointing Mark Conkling to act as personal representative for Bryan Conkling.  (Doc. 65). Plaintiff's counsel filed a status report on February 29, 2016, advising that Bryan's death certificate had recently been received, that probate proceedings were being prepared and

estimating that the matter would be ready to proceed in 30-60 days.  On May 16, 2016, the First Judicial District Court of New Mexico appointed Mark Conkling as personal representative.  *See* Doc. 67-1 (Order of Intestacy and Determination of Heirship).

Based on the Court's December 30th Order, the Motion for Substitution should have been filed on May 26, 2016, but Plaintiff's counsel missed the deadline.[1]  When counsel sought concurrence from Defendants' counsel on June 8, 2016 on filing the Motion for Substitution, that concurrence was refused.  Plaintiff's counsel contacted defense counsel again two days later asking for a position regarding the Motion for Substitute, but defense counsel indicated that the Motion was opposed.  Plaintiff filed the Motion to Substitute Parties on June 10, 2016.

## DISCUSSION

The Rules of Civil Procedure set forth requirements for the substitution of parties in the event of the death of a party:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Fed.R.Civ.P.25(a)(1).  Failure to comply with the 90-day time frame is not mandatory.  Whether an action should be dismissed for failure to comply with this time frame lies within the sound discretion of the district court.  *Kasting v. American Family Mut. Ins. Co*., 196 F.R.D. 595, 601

---

[1] The Court notes that Plaintiff's counsel says the deadline for filing the motion was May 31, 2016 rather than May 26th. Doc. 70 at 2.  However, under Rule 6(a)(1), time computation includes intermediate Saturdays, Sundays and legal holidays which means that ten days from the date of the Order appointing Mark Conkling as personal representation is May 26, 2016, not May 31, 3016 as Plaintiff contends.  This would also mean that the Motion for Substitution was untimely by fifteen days instead of ten days.  It appears that Plaintiff's counsel may be relying on a pre-2009 amendment version of Rule 6(a) which applied a special computation procedure for time periods of less than 11 days, excluding intervening weekends and legal holidays.  This approach has been abrogated.  *See Yost v Stout,* 607 F.3d 1239, 1241 n.3 (10th Cir. 2010).

(D.Kan.,2000); *see* Fed.R.Civ.P. 25(a)(1) (Adv. Comm. Note). In exercising this discretion, a court must be mindful of the underlying purpose of Rule 25(a)(1) which is to allow flexibility in substitution. *Id.*; *see Rende v. Kay,* 415 F.2d 983, 986 (D.C.Cir. 1969) (noting that Rule 25 should be liberally interpreted); *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1297 (7th Cir. 1993) (extensions of 90-day time period may be granted liberally). It is clear in this case that all relevant parties were served with the Suggestion of Death, and that the 90-day rule has been waived by the Court's Order extending the time for substitution of parties. Defendants, however, contend that the untimeliness of Plaintiff's Motion to Substitute Parties under the Court's December 30th Order warrants dismissal of the case under Rule 25(a).

**I.     Plaintiff's Motion to Accept Late-Filed Motion to Substitute Parties**

In this motion, Plaintiff concedes that his motion was filed late, and asks the Court to consider the delay under Rule 6(b)'s "excusable neglect" standard, which applies to motions for substitution. Rule 6(b)(2); *Kasting v. American Family Mut. Ins. Co.*, 196 F.R.D. at 601; 7C Wright & Miller, supra, § 1955, at 545–546. For motions requesting an extension of time after the time has expired, a court may grant the request for good cause "if the party failed to act because of excusable neglect." Fed.R.Civ.P.6(b)(1)(B). "Good cause" is not an especially rigorous standard, and has been interpreted broadly, for example providing some reasonable explanation for the delay is given. *See, e.g., Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir.1988) ("good cause" means a valid reason for delay, such as the defendant's evading service). The parties do not debate the existence of "good cause" and dispute only whether Plaintiff's counsel has shown "excusable neglect."

The concept of "excusable neglect" has been described as a "somewhat elastic concept," and is not limited exclusively to omissions caused by circumstances outside the moving party's

control, but which must be assessed in view of all relevant circumstances surrounding the omission. *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 390-95 (1993) (interpreting the term "excusable neglect" in a bankruptcy rule derived from Rule 6(b)). The term "neglect" does not require a showing that the party was without fault but encompasses "inadvertence, mistake, or carelessness," although the neglect may not necessarily be "excusable." *Id.* at 391. A finding of excusable neglect requires both a demonstration of good faith and a reasonable basis for failing to comply with the specified time period. *Hammons v. Internat'l Playtex, Inc.*, 676 F.Supp. 1114, 1118 (D.Wyo. 1988) (citing *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1290 (10th Cir. 1974)).

Courts look at various factors to determine whether the neglect is excusable: (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) and whether the movant acted in good faith." *Pioneer Investment*," 507 U.S. at 385, cited in *City of Chanute, Kan. v. Williams Natural Gas Co*,.31 F.3d 1041, 1046 (10th Cir. 1994). Whether neglect is excusable depends on the facts of each case in which the question arises, and the question "should be determined on the basis of the common-sense meaning of the two simple words applied to the facts which are developed." *Buckley v. U.S.*, 382 F.2d 611, 614 (10th Cir. 1997).

In this case, Plaintiff sought and obtained an extension of time in which to file the motion to substitute parties. The question here is whether Plaintiff's counsel has shown excusable neglect for filing the motion to substitute fifteen days after the deadline imposed by the Court in its December 30th Order.

    A.    <u>Parties' Positions</u>

Plaintiff contends that Defendants can show no prejudice because they have been aware of the anticipated substitution of Mark Conkling as a party since the Suggestion of Death was filed in September of 2015. Parties were simply waiting for the death certificate to be prepared before the motion to substitute parties could be filed. Plaintiff also argues that the length of the delay is insignificant in the context of the case, especially when considering the length of other delays over which counsel had no control. Finally, Plaintiff's counsel contends that his reason for missing the deadline is reasonable. In the weeks following the state court's appointment of Mark as Bryan's personal representative, counsel was inundated with work matters that resulted in an inadvertent failure to calendar the deadline for the motion to substitute. Counsel explains that he was responsible for addressing summary judgment matters in two cases, one which involved attendance at a hearing. However, the main culprit for the delay was the sudden need to return to representing a client in a complex civil case who had previously been dismissed from the case, but was reinstated as a defendant when the undersigned entered an Order granting a Motion to Reconsider the dismissal. Because the client had been dismissed pursuant to Rule 12(b)(6) more than a year prior, counsel had not been involved in the case and was suddenly faced with reviewing hundreds of pleadings and tens of thousands of pages of discovery that had been filed in the interim. Plaintiff's counsel was forced to attend to the immediate deadlines in that case and as a result of the press of work and the time urgency in that case, Plaintiff's counsel neglected to timely file the motion for substitution in this case.[2]

---

[2] Plaintiff's counsel does not specify the name of the cases these cases, but the Court is very familiar with the case to which the undersigned has been assigned as presiding judge. *See Amaya et al. v. Bregman et al.*, Civil No. 14-00599 WJ/SMV. The Court also takes judicial notice of the massive nature of pleadings and discovery documents in that case. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (A court may judicially notice its own records). A review of that docket indicates that the motion to reconsider was filed on March 22, 2016 (Doc. 415) and the Court entered its order granting the motion to reconsider on May 20, 2016 (Doc. 489). Thus, Plaintiff's counsel found himself suddenly back in the thick of things representing his client in the Amaya case around the same time as he received Bryan Conkling's corrected death certificate, which then allowed him to file the petition to appoint Mark as personal representative.

Defendants claim no prejudice by the late filing, but they contend that the untimeliness is inexcusable. They point out that Plaintiff's counsel waited a month after receiving the death certificate before filing the petition to appoint Mark as Personal Representative, even when counsel had represented to the Court in his February 29, 2016 status report that he was "preparing to file appropriate documents to have Mark Conkling appointed as the personal representative for his son. . . ." Doc. 66.

B.    Court's analysis

The Court agrees with Plaintiff that the delay in filing the motion to substitute has caused Defendants no prejudice. Defendants have been aware all along that the substitution would take place, even as far back as September 3, 2015 when the Suggestion of Death was filed. The Court also agrees that the untimeliness of the motion for substitution, even including counsel's one-month delay in filing the petition for appointment of personal representative, is minor when compared with the delays that were outside of Plaintiff's counsel's control, such as the months waiting for the death certificate and then subsequently, for the state court to rule on counsel's petition for appointment of personal representative.

The Court does take issue, however, with Plaintiff's counsel's argument that the delay would not have occurred had Defendants initially agreed to the substitution of parties prior to an appointment of a personal representative, in which case counsel could have filed the motion for substitution months ago. *See* Doc. 70 at 4. Defendants correctly observe that they could not have agreed to the substitution of parties at that time because Mark Conkling would have had no standing to bring this case until it had been determined that he was the "proper" party substituted for the deceased, as required under Rule 25(a). *See* NMSA (1978) §45-3-703(E) (". . . a personal representative of a decedent domiciled in New Mexico at the decedent's death has the same

7

standing to sue and be sued in the courts of New Mexico. . . ."); *see also* Fed.R.Civ.P. 17(a)(1) (requiring an action to be prosecuted in the name of the real party in interest).

Courts generally do not consider a busy calendar sufficient to demonstrate excusable neglect. *See Keeton v. Morningstar, Inc*., 667 F.3d 877, 883 (7th Cir. 2012) ("[I]t is widely accepted that neglect due to a busy schedule is not excusable."). In this case, Plaintiff's counsel failed to timely file the motion to substitute parties when he experienced a sudden crush of case work and neglected to calendar the deadline. The omission is clearly due to Plaintiff's counsel's own inadvertence or fault. "Fault" in the delay remains a "very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *City of Chanute, Kan. v. Williams Natural Gas Co*., 31 F.3d 1041, 1046 (10th Cir. 1994). However, "excusable neglect" is an "elastic concept" and "is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* (citing *Pioneer Investment,* 507 U.S. at 392). A court must consider all the relevant facts and circumstances surrounding the omission (here, the delay) in order to determine whether excusable neglect is shown. *Id.; Buckley,* 382 F.2d at 614 (whether neglect is excusable depends on the facts of each case).

When considering the weight of all the facts and circumstances, the Court finds that counsel has shown excusable neglect for the late-filing of the motion to substitute parties. First, Defendants will suffer no prejudice, nor do they claim any prejudice, by the late-filing of the motion to substitute parties. Second, the delay caused by Plaintiff's counsel's oversight is negligible when viewed in context of the other delays in this litigation. For example, Plaintiff's counsel did not receive a death certificate until the beginning of February 2016—five months after the Suggestion of Death was filed—and it took the rest of February to get the errors in the death certificate corrected. While the unfortunate incident of Bryan's death has caused

inevitable delays in the administrative course of this case, the fifteen-day filing delay does not in itself have any impact on judicial proceedings.  Third, Plaintiff's counsel has offered a reasonable basis for his failure to comply with the Court's filing deadline.  Fourth, there is no evidence that counsel did not act in good faith.  The untimeliness of the motion to substitute parties is an isolated occurrence, and except for the untimely filing of the motion to substitute parties, Plaintiff's counsel has otherwise been mindful of the timelines and administrative requirements in this matter.  He served the Suggestion of Death on the relevant parties and timely requested an extension of time to file the motion to substitute parties, as required under Rule 25(a)(1) & (3).  Counsel also complied with this Court's Order for a status report in the event the motion to substitute parties was not filed within sixty days of the Court's Order.

There is a final factor to consider under these circumstances.  While Bryan Conkling initiated this case, his ill-timed death has temporarily suspended matters pending the substitution of parties.  It would be inequitable to allow the untimeliness of a motion by a few days to forever bar his estate from proceeding with this litigation, particularly where the motion became necessary only because of his death.  *See Pioneer Investment,* 507 U.S. at 395 (concluding that the determination of excusable neglect includes equitable considerations).

Therefore, while the Court recognizes that Plaintiff's counsel was at fault in the late-filing of the motion, the Court finds that counsel's inadvertence constitutes neglect that is excusable under all the circumstances of this case.  *Cmp. City of Chanute,* 31 F.3d at 1047 (affirming district court's finding of excusable neglect existed, based on short length of delay and "no evidence that the cities acted in other than good faith" even though delay was fault of city).

**II.     Motion For Substitution of Parties (Doc. 67)**

Defendants offer no reason to deny Plaintiff's Motion for Substitution of Parties except for the untimeliness of the motion and no showing of excusable neglect.  Since the Court has rejected Defendants' argument, because Defendants present no opposition to the motion on its merits, and because the requirements of Rule 25(a) have otherwise been met, Plaintiff's Motion for Substitution of Parties is GRANTED.

**THEREFORE,**

**IT ORDERED** that:

(1)  Plaintiff's Motion to Accept Late-Filed Motion to Substitute Parties **(Doc. 70)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order; and

(2) Plaintiff's Motion for Substitution of Parties **(Doc. 67)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE