IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYAN CONKLING,

      Plaintiff,

      v.                                          No. 14-cv-0234 WJ/KBM

TRI-STATE CAREFLIGHT, LLC and
BLAKE STAMPER

      Defendants.[1]

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COUNT III AND CLAIMS FOR EMOTIONAL DISTRESS DAMAGES FOR REFUSING TO COMPLY WITH THE COURT'S DISCOVERY ORDER

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Count III and Claims for Emotional Distress Damages for Refusing to Comply with the Court's Discovery Order, filed October 6, 2016 (**Doc. 76**). Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion has merit in part; therefore, it is GRANTED in part and DENIED in part.

### BACKGROUND

This is an employment discrimination case, filed in First Judicial District Court, County of Santa Fe, on January 13, 2014. Defendants removed the case to federal court on March 10, 2014 based on diversity.[2] Bryan Conkling worked as a base manager for Tri-State Careflight

---

[1] Bryan Conkling died intestate on September 2, 2015, during the pendency of this case, and his father Mark has been substituted as the named Plaintiff as his personal representative. *See* Doc. 72. The Complaint was amended to reflect that change. *See* Doc. 11. For ease of reference, the Court will refer to "Bryan" where necessary in order to distinguish the presently-named plaintiff from the original plaintiff in this action.

[2] The Court initially questioned the sufficiency of the Notice of Removal regarding diversity jurisdiction. *See* Doc. 6. As a limited liability company, Tri-State's citizenship is determined by the citizenship of its members and not its

("Tri-State"), an emergency medical services ("EMS") provider that provides aerial transport of critically ill and injured patients for health care facilities and EMS agencies. Bryan contends that Tri-State and Dr. Stamper began to discriminate against him after he became ill in the summer of 2012 and had to take medical leave. He alleges that when he returned to work, he was not permitted to work in Santa Fe as he had done in the past, but was assigned to the Gallup base and was demoted. He eventually was returned to a position as a co-manager at the Santa Fe base, but found that position intolerable. Bryan also alleges retaliation because he engaged in protected labor organizing activity when he informed certain governmental regulatory agencies about safety violations and violations regarding transport, storage and use of controlled substances. Bryan was terminated from his position, and he contends that his termination was based on discrimination on the basis of his serious health condition and in retaliation for his protected labor organizing activity and for reporting safety violations. The Amended Complaint (Doc. 11) alleges four counts:

    Count I:    Retaliatory Discharge;

    Count II:    Defamation;

    Count III:    Violation of the New Mexico Human Rights Act, NMSA 1978, §28-1-7(A); and

    Count IV:    Malicious Abuse of Process.

As part of the requested relief, Plaintiff requests actual damages based on emotional distress. *See* Am. Compl., at 9, ¶D; Ex. A (Initial Discl.) at 3. In this motion, Defendant moves to dismiss Count III as well as all of Plaintiff's claims for emotional distress, based on Plaintiff's failure to provide information on his medical information.

---

principal place of business. *Siloam Springs Hotel, LLC v. Century Sur. Co.,* 781 F.3d 1233,1237-38 (10th Cir. 2015). In response to the Court's inquiry, Defendants filed an Amended Notice of Removal which includes additional detail concerning the citizenship of Tri-State, stating that all of its members reside in Arizona, which satisfies the diversity requirements of 28 U.S.C. §1332. *See* Doc. 7.

**DISCUSSION**

Defendants claim that throughout the discovery period, Bryan refused to identify his medical providers or to execute medical releases for those providers, in violation of this Court's local rule D.N.M. LR-Civ.26.3(d) which requires that a party whose condition is an issues "must make a good faith effort to produce" such information. Bryan also refused to answer questions in his deposition concerning his medical diagnoses, the identity of the doctors who treated him during his medical leave under the Family and Medical Leave Act ("FMLA") and the medications he was prescribed, claiming that this information was privileged under physician-patient confidentiality. *See* Ex. B at 36:23-25-37:1-13.

On April 6, 2015, Defendant filed a motion to compel Plaintiff to provide medical releases, identify his treating physicians and answer deposition questions. Doc. 38. On July 24, 2015, Chief Magistrate Judge Karen B. Molzen granted the motion, ordering Bryan to identify his medical healthcare providers for the past five years and execute medical releases and records which are compliant with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and gave Plaintiff until August 5, 2015 to do so. Doc. 56 at 2-3 ("July 24, 2015 Order"). The August 5th deadline passed without this information being provided to Defendants, and in early September 2015, Bryan Conkling died unexpectedly in the Sandia Mountains without having produced the releases or information about his medical providers as ordered by the court, or supplementing his deposition answers.

Under Federal Rule of Civil Procedure 37(d)(1)(A)(ii), the Court may order sanctions if "a party, after being properly served with interrogatories . . . or a request for inspection . . . fails to serve its answers, objections, or written response." Under subsection (d)(3), which cross-references Rule 37(b)(2)(A)(i)-(vi), the sanctions may include dismissing the case in whole or in

part, or rendering default judgment. Under Rule 41(b), "[i]f a plaintiff fails to prosecute or comply with these rules . . . a defendant may move to dismiss the action or any claim against it." Courts in the Tenth Circuit considering dismissal under either of these rules apply the factors in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992) (affirming dismissal under Rule 41), which are the following:

(1) the degree of actual prejudice to the defendant;

(2) the amount of interference with the judicial process;

(3) the culpability of the litigant;

(4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and

(5) the efficacy of lesser sanctions.

965 F.2d at 921; *see also Klein v. Harper,* 777 F.3d 1144, 1147-48 (10th Cir. 2015 (affirming dismissal under Rule 37).

I.   **Dismissal of Count III**

Plaintiff offers the Court two reasons why Defendants' motion should be denied. First, Plaintiff contends that Bryan's failure to provide Defendants with the medically-related information is not critical to the claim he is bringing under the New Mexico Human Rights Act ("Human Rights Act"). Plaintiff argues that while the Human Rights Act prohibits an employer from discriminating against any otherwise qualified person because of any serious medical condition, it does not indicate that the nature of a plaintiff's serious medical condition is pertinent to the issue of whether that individual was a victim of discrimination. Second, Plaintiff contends that Bryan's objections to disclosing medically-related information was "reasoned and thoughtful" and thus his failure to produce this information should be overlooked for that reason. Doc. 79 at 3.

Neither argument is remotely convincing. The Human Rights Act prevents an employer from demoting or discrimination against any person "otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition. NMSA 1978, §28-1-7A. In the Joint Status Report, Plaintiff states that his discrimination claim is alleged "on the basis of his serious health condition . . . ." Doc. 19 at 2. The allegations in the Amended Complaint also assert that Bryan was terminated after Defendant "learned of Mr. Conkling's serious medical condition." Doc. 11, ¶38. These contentions govern the case, since the Amended Complaint has not been further modified. In asserting a Human Rights Act claim based on a "serious medical condition," Bryan put his medical condition directly at issue. Further, Plaintiff is incorrect in arguing that the identity and nature of his medical condition is not relevant or pertinent to Count III because *unless* he could demonstrate that he had a "serious medical condition," Bryan would not be able to bring a viable claim under the Human Rights Act.

Plaintiff also attempts to mitigate Bryan's failure to provide this information by arguing that his reasons for non-disclosure were "thoughtful." Doc. 79 at 3. This argument is plausible only up to the point that Bryan was *ordered* by Judge Molzen to identify his medical healthcare providers and execute the requested medical records. At that point, the "thoughtfulness" and "reasonableness" of his protestations became immaterial. Plaintiff insists that but for his death, Bryan would have produced his medical information. The Court agrees with Defendants that this response may be emotionally appealing, but is factually baseless because Bryan's death occurred one month *after* the deadline by which he was supposed to comply with Judge Molzen's July 24, 2015 Order. Bryan was alive during the entire period of time between the

5

Court's entry of the July 24, 2015 Order and the August 5, 2015 deadline, during which he could have identified his medical providers and execute medical releases, but did not do so.

Bryan's death has some significance to the analysis here in that Defendants are now permanently deprived of evidence which affects their ability to defend this case. Even if Plaintiff were to produce the disclosures now, Defendants can no longer question Bryan on that information or have him answer the questions which he refused to answer in his earlier deposition.[3] The situation is rather unusual, but is nevertheless a real example of incurable prejudice and satisfies the prejudice factor of *Ehrenhaus*. Plaintiff's conduct has also interfered with aspects of the judicial process. After ignoring repeated efforts by Defendants to gather information that was material to his discrimination claim based on an alleged serious medical condition, Bryan continued his refusal to provide this information by failing to comply with the Court's very clear Order requiring him to furnish information that should have been disclosed a year earlier in responding to discovery requests. This failure to disclose demonstrates a contempt for one's discovery obligations as well as for this Court's authority.

From the facts presented in this motion, it is reasonable to infer that Bryan had no intention of complying with the Court's July 24, 2015 Order. Compliance with the Order would not have been particularly time-consuming. The release forms are readily available, and Defendants had requested the most basic information about his medical care providers. Bryan could also easily have answered deposition questions about his medical conditions and treatment. No individual or circumstances prevented him from providing this information, which leaves Bryan culpable and responsible for the situation that now exists. Plaintiff's counsel maintains

---

[3] Plaintiff, as Bryan's Personal Representative, would have been authorized to execute the necessary medical releases and obtain medical information, but disclosing this information to Defendants would not have completely resolved the issue because Defendants still would be unable to depose Bryan on his medical diagnosis and treatment although had Plaintiff executed the necessary medical releases, then Defendants may have been able to depose any treating physicians.

6

that Bryan had every intention of producing the signed release. He states that he had discussed the matter with Bryan in August of 2015, and that Bryan had stated that he signed the release and would deliver it to Defendants after his weekend camping trip. However, Bryan never returned from that trip, and interestingly, the signed release was not found among his possessions. Apart from this rather tepid argument concerning the signed medical release, Plaintiff's counsel offers no thoughts at all regarding the reasons why Bryan did not provide other information about his medical providers and treatment prior to the camping trip. As a result, the Court finds that there is no evidence that Bryan had intended to comply with the Court's July 24, 2015 Order.

As Defendants note, the only *Ehrenhaus* factor that is not directly and clearly met is the "warning in advance" factor. Defendants point out that Plaintiff must have known that his repeated refusal to provide information and answer questions—and particularly his refusal to comply with a Court Order—would result in serious sanctions. The Court agrees that the advanced warning requirement has not been met, and if Defendants were seeking dismissal of the entire complaint, this factor would be critical since all of these factors must be met before an entire action may be dismissed under Rule 37(b)(2)(A). The *Ehrenhaus* factors envision that when those factors are not met, lesser sanctions are appropriate:

> At the outset, we recognize that dismissal represents an extreme sanction appropriate only in cases of willful misconduct. . . . In many cases, a lesser sanction will deter the errant party from further misconduct. "Because dismissal with prejudice 'defeats altogether a litigant's right to access to the courts,' it should be used as 'a weapon of last, rather than first, resort.'" [citation omitted].

*Ehrenhaus,* 965 F.2d at 920. Lesser sanctions would include a dismissal of portions of the action—or, in this case—dismissal of one of the claims and one category of damages.

An advance warning serves no purpose in this situation, since Bryan is not available to correct his behavior after the fact. On the other hand, Bryan's non-availability does not hamper

7

this Court's authority to issue sanctions under *Ehrenhaus* or Rule 37, which lists dismissal of an action or proceeding "in whole or in part" as a sanction for not obeying a discovery order. *See* Rule 37(b)(2)(A)(v). By refusing to produce the requested medical information, Plaintiff cannot sustain a claim under the Human Rights Act, under which he asserts he was discriminated because of a "serious medical condition." Allowing Plaintiff to proceed under this theory would cause Defendants incurable prejudice, and Plaintiff has not presented any evidence to persuade the Court that Bryan was not culpable in his continued refusal to disclose this information.

For these reasons, the Court grants Defendants' request to dismiss Count III of the Amended Complaint, which is asserted under the Human Rights Act.

## II. Dismissal of Request for Damages Based on Emotional Distress

Defendants also ask that the Court dismiss Plaintiff's claims for emotional distress damages. Neither party formulates much of an argument specific to how Plaintiff's failure to produce his medical information directly relates to emotional distress damages. Certainly, such damages are available to a plaintiff who prevails on a Human Rights Act claim. *See* NMSA 1978, §28-1-13D (allowing for recovery of actual damages); *Behrmann v. Phototron Corp.,* 110 N.M. 323, 328 (1990) (construing damages provision of § 28-1-13: "*actual damages* is synonymous with compensatory damages") (emphasis in original), cited in *Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. 441, 443 (N.M.,1994).

The problem is that there is no indication from either the Amended Complaint or the initial disclosures that Plaintiff's request for emotional distress damages is tied exclusively to the Human Rights Act claim. While there would be a basis for dismissing this category of damages relative to the Human Rights Act claim, there is no reason to prevent Plaintiff from seeking such damages in connection with his other claims, where his failure to disclose medically-related

information is not crucial.  With the dismissal of Count III, Plaintiff has no recourse to emotional distress damages for that claim.  However, the Court denies Defendants' motion with regard to the dismissal of Plaintiff's emotional distress damages for his other claims.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Count III and claims for Emotional Distress Damages for Refusing to comply with the Court's Discovery Order **(Doc. 76)** is hereby GRANTED IN PART and DENIED IN PART, in that:

(1) the Court GRANTS Defendants' motion with regard to the dismissal of Count III, which is hereby DISMISSED WITH PREJUDICE for reasons described in this Memorandum Opinion and Order; and

(2) the Court DENIES Defendants' motion with regard to the dismissal of Plaintiff's emotional distress damages.

_____
UNITED STATES DISTRICT JUDGE