IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK CONKLING,
Personal Representative of the Estate
of Bryan Conkling,

      Plaintiff,

v.                                                 CIV 14-0234 WJ/KBM

TRI-STATE CAREFLIGHT, LLC and
BLAKE STAMPER, Individually,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Plaintiff's Motion for Additional

Discovery (*Doc. 77*), filed October 11, 2016. Having reviewed the parties' submissions

and the relevant law, the Court finds that Plaintiff's Motion is well-taken in part and will

be granted in part.

## I.    BACKGROUND

Defendant Tri-State Careflight, LLC, is an emergency medical services provider

specializing in medical transport flights using helicopters and fixed-wing aircraft. *Doc. 11*

(Second Amended Complaint) at ¶ 9; *Doc. 13* (Answer to Second Amended Complaint)

at ¶ 8. Bryan Conkling[1] worked as a base manager in Santa Fe for Tri-State. *Doc. 11* at

¶ 10; *Doc. 13* at ¶ 8. Plaintiff alleges that Bryan was discriminated against by

Defendants after he became ill in the summer of 2012 and had to take medical leave.

*Doc. 11* at ¶¶ 11-14. Plaintiff alleges that after Bryan returned to work, he was

---

[1] Bryan Conkling died intestate on September 2, 2015, during the pendency of this case, and his father Mark has been substituted as the named Plaintiff as his personal representative. *See Doc. 72*. For ease of reference, the Court will refer to "Bryan" where necessary in order to distinguish the presently-named plaintiff from the original plaintiff in this action.

reassigned to Defendant Tri-State's Gallup base and demoted. *Doc. 11* at ¶ 14. Although he was subsequently returned to a position as a co-manager of the Santa Fe base, Bryan found this position to be intolerable. *Doc. 11* at ¶ 17. Plaintiff also alleges that Bryan was retaliated against as a result of engaging in protected labor organizing activity. *Doc. 11* at ¶ 18. Bryan was ultimately terminated on July 26, 2013. *Doc. 11* at ¶ 22; *Doc. 13* at ¶ 18. In all, the Amended Complaint alleged four counts: (I) retaliatory discharge; (II) defamation; (III) violation of the New Mexico Human Rights Act; and, (IV) malicious abuse of process. *Doc. 11* at ¶¶ 28-44.

This Court entered its first Scheduling Order on July 21, 2014. *Doc. 21.* Pursuant to that Order, discovery was due by January 30, 2015. *Id.* The Order provided that "discovery shall not be reopened, nor shall case management deadlines be modified, except by an order of the Court upon a showing of good cause." *Id.* at 1. The Order further provided that the discovery deadline "shall be construed to require that discovery be <u>completed</u> on or before [the discovery deadline]." *Id.* (emphasis in original). And, pertinent to this case, the Order provided that "[a] notice to take deposition shall be considered timely only if the deposition takes place prior to the deadline." *Id.* The Court later extended the discovery deadline to March 30, 2015. *Doc. 35.*

During discovery, the parties were unable to reach an agreement as to certain issues, and cross-motions to compel followed. *See Docs. 38, 41, 50* & *52.* With these motions pending, Plaintiff's counsel wrote to Defendants' counsel on May 21, 2015, (after the expiration of the discovery deadline) regarding the depositions of Defendant

Stamper and Defendant Tri-State's Rule 30(b)(6) designees. *Doc 77-1* at 1.[2] Plaintiff's counsel asked: "Do you prefer that we take the depositions next week and leave them open to continue in the event the court gives us any of the information we've requested but not yet received, or that we hold off on taking them until we know whether or not that information will be compelled?" *Id.* Defendants' counsel responded on May 22, 2015: "We are amenable to resetting all of the depositions to a time after the motions to compel are decided. I think we should move the Court to extend the deadlines for discovery and pretreat (sic) motions given the current circumstances." *Id.*

On July 24, 2015, this Court entered an Order addressing the parties' cross-motions. *See Doc. 56.* In that Order the Court granted Defendants' Motion to Compel Medical records and ordered Bryan to "identify his medical healthcare providers for the past five years and execute HIPPA-compliant releases for those medical records." *Id.* at 1. The Court also granted Bryan's Motion to Compel in part, and ordered Defendants to:

    a.  Produce the spreadsheet prepared by Matt Reilly regarding damages as soon as possible;

    b.  Identify with particularity the statements they contend are defamatory in "the Letter" and "produce any documentation that evidences the truth or falsity of the statements identified;"

    c.  Provide supplemental responses to discovery requests regarding why they believe Bryan posted the Letter on justhelicopters.com;

    d.  Provide IP addresses of its computers as requested;

    e.  Provide a verified response regarding any actions taken against employees who responded to the Letter;

    f.  Provide a verified response as to any managerial employees who are similarly-situated to Bryan who submitted time records indicating that they were at work when they were scheduled to be, but, in fact, were absent;

    g.  Fully answer and provide supplemental responses regarding why Dr. Stamper believed that Bryan was not permitted to engage in labor organizing activity at the time he made that statement to Bryan;

---

[2] While the identity of the deponents is not apparent from the face of the email exchange, Plaintiff's Motion makes clear that the sought depositions were of Defendant Stamper and Defendant Tri-State's Rule 30(b)(6) designees. *See Doc. 77* at 2.

      h.  Provide information as to any regulatory violations found by
          government agencies for the two years prior to Bryan's termination;

      i.  Provide full descriptions of all other cases in which Tri-State CareFlight
          was a party in the past ten (10) years.

*See Doc. 56* at 2-3. The Court required the parties to comply with the provisions of this

Order no later than August 5, 2015. *Id.* at 3. Defendants complied with this Court's

Order. *See Docs. 57 & 58*. Bryan did not.

       Shortly thereafter, Defendants' present counsel entered their appearance on

August 14, 2015. *Doc. 59*. Less than a month later, Bryan died on September 2, 2015.

*See Doc. 62*. The trial setting in this case was vacated and all associated deadlines

were terminated while Plaintiff sought to substitute himself for Bryan. *See Doc. 63*.

Eventually, Mark was substituted as Plaintiff almost a year after Bryan's death, on

August 3, 2016. *Doc. 72*.

       This Court held a telephonic status conference on August 30, 2016, during which

the parties discussed reopening discovery. *See Doc. 74*. Because the discovery

deadline had lapsed in March of 2015, the Court held that reopening discovery would

require a showing of good cause. *Id.*

       In the interim, Defendants filed a Motion to Dismiss Plaintiff's Count III and

Claims for Emotional Distress Damages for Refusing to Comply with this Court's

Discovery Order. *See Doc. 76*. Presiding District Judge William Johnson granted this

Motion in part on November 2, 2016. *See Doc. 82*. Noting that Bryan's unfortunate

death occurred over one month after he was to comply with this Court's Order, Judge

Johnson ruled that "it is reasonable to infer that Bryan had no intention of complying

with the Court's July 24, 2015 Order." *Id.* at 6. Judge Johnson accordingly dismissed

with prejudice Plaintiff's Count III as a sanction for Bryan's failure to comply with this Court's discovery order. *Id.* at 9.

Plaintiff now seeks to pick up where Bryan left off, and moves the Court to reopen discovery to permit the depositions of Defendant Stamper and the Rule 30(b)(6) designee. *Doc. 77* at 2.

> Plaintiff requests specifically to take the deposition of Dr. Stamper; to take the deposition of a 30b6 (sic) witness designated to testify regarding Tri-State Careflight's reasons for terminated (sic) Bryan Conkling; about Tri-State Careflight's communications with state and federal agencies regarding Bryan Conkling's termination; and about Tri-State Careflights' (sic) actions related to union organizing efforts.

*Doc. 83* at 4. Plaintiff further requests to be permitted to serve no more than five (5) interrogatories and five (5) requests for production on Defendants collectively. *Id.*

While they originally agreed to postpone the depositions at issue, Defendants, armed with new counsel, now oppose Plaintiff's Motion to reopen discovery. *See generally Doc. 78*. Specifically, "Defendants oppose the request because Plaintiff has not been diligent in moving this case along and because Plaintiff's discovery delays have irrevocably prejudiced Defendants." *Doc. 78* at 3.

## II.   LEGAL STANDARD

Whether or not to reopen discovery is within the sound discretion of the district court. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). The Tenth Circuit has identified six relevant factors to be considered when deciding whether to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of

the time allowed for discovery by the district court, and 6) the likelihood
that the discovery will lead to relevant evidence.

*Id.*

## III.   ANALYSIS

As to the first *Smith* factor, Defendants concede that "trial is not imminent." *Doc. 78* at 3. This is an understatement, as trial has not yet been re-set by presiding judge Johnson. Accordingly, this factor weighs in Plaintiff's favor.

As to the second, while Defendants initially agreed to reschedule the depositions, they now oppose doing so. The Court finds that this factor weighs in favor of Plaintiff as to the depositions of Defendant Stamper and the Rule 30(b)(6) designee, as Defendants initially agreed to postpone those depositions until after the Court ruled on the parties' cross-motions to compel. However, there is no evidence that Defendants ever agreed to permit Plaintiff to follow-up on their discovery responses through the use of interrogatories or requests for production. As such, this factor weighs against permitting Plaintiff to conduct additional discovery beyond the two depositions identified.

The third factor is not squarely addressed by Defendants. Rather than focus on any prejudice that Plaintiff's requested discovery would cause them, Defendants rely on *Bryan's* failures to comply with this Court's order: "Allowing Plaintiff to conduct discovery of the material Defendants produced when Defendants are unable to question Bryan Conkling about that material (or anything else) would prejudice Defendants and reward Plaintiff for violating court rules and orders." *Doc. 78* at 3. As Plaintiff correctly argues, this position is misplaced, as *Bryan's* failures have been addressed by Judge Johnson's decision to dismiss Count III for Bryan's failure to comply with this Court's discovery Order. In light of this sanction, the Court sees no reason to further punish Plaintiff for

6

Bryan's failures. Having failed to show that they would be prejudiced by Plaintiff's proposed additional discovery, this factor weighs in Plaintiff's favor.

The fourth factor, however, weighs against Plaintiff. The Court's Scheduling Order made clear that depositions would be considered timely only if they were taken prior to the expiration of the discovery period. *Doc. 21* at 1. While the parties agreed to take the depositions of Defendant Stamper and the Rule 30(b)(6) designee outside of this period, no such stipulation was presented to the Court. Furthermore, even if the Court had approved of the parties' stipulation, Plaintiff did not diligently pursue the subject depositions after the Court ruled on the parties' cross-motions to compel. Had Bryan waited until receipt of the supplemental discovery ordered by the Court, he still had nearly a month to follow-up on that discovery or to schedule the depositions at issue. Thus, while the Court is sympathetic to Bryan's untimely death, the fact remains that he did not diligently pursue the requested discovery within the guidelines established by the Court.

Neither party adequately addresses the fifth factor, focusing on general foreseeability of the need for additional discovery rather than the actual standard, which is "the foreseeability of the need for additional discovery *in light of the time allowed for discovery by the district court.*" *See Doc. 78* at 4; *Doc. 83* at 3-4. Here, the Court extended the discovery period an additional sixty (60) days at the request of the parties, meaning that the parties had roughly eight (8) months to complete discovery, and the parties did not seek a further extension of this deadline. Given this extended discovery deadline, and the absence of any request to extend it further, the Court cannot say that

the need for additional discovery was foreseeable in light of the time allowed for it. Thus, this factor weighs against Plaintiff.

The final factor weighs in Plaintiff's favor. Certainly, the depositions of the named Defendants in this action will reveal evidence that is relevant to Plaintiff's claims and Defendants' defenses. Moreover, the limited discovery that Plaintiff requests in addition to these depositions is narrowly focused.

The Court concludes that Plaintiff should be permitted to take the depositions of Defendant Stamper and of Defendant Tri-State's Rule 30(b)(6) designee, but he will not be permitted to engage in further written discovery. As described above, four of the six *Smith* factors weigh in favor of permitting Plaintiff to take these depositions, and the depositions were originally agreed to by Defendants' prior counsel. However, because the additional interrogatories and requests for production requested by Plaintiff were never agreed to by Defendants, only three of the six factors weigh in favor of permitting Plaintiff's proposed written discovery. On balance, the Court finds that Plaintiff's delay in requesting this additional written discovery is inexcusable, as it was not even mentioned in Plaintiff's counsel's requests to opposing counsel regarding the depositions, which was itself two months past the discovery deadline.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Additional Discovery (*Doc. 77*) is hereby **granted in part**. Plaintiff will have until December 9, 2016, to complete the depositions authorized above.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE